# EXHIBIT  A

## SETTLEMENT AND RELEASE AGREEMENT

This settlement and release agreement ("Agreement") between Dana Thomas (referred to collectively in this Agreement as "Plaintiff," "you," "your," or "Ms. Thomas"), and Centene Management Company, LLC. (referred to in this Agreement as "Centene," "Defendant," the "Company," "us" or "we") (collectively, the "Parties"). This Agreement is dated for reference purposes the 8th day of March, 2022, which is the date we delivered this Agreement to you for your consideration.

1. **Litigation.** Pending before the United States District Court for the Northern District of Georgia, is *Dana Thomas v. Centene Management Company, LLC*, Case Number 1:21-cv-04099-CAP (hereinafter referred to as the "Litigation"), brought by Plaintiff Dana Thomas ("Plaintiff"). In this Litigation, Plaintiff alleges wage-and-hour claims under the federal Fair Labor Standards Act. Plaintiff, originally filed her Complaint on behalf of a purported group of similarly situated individuals, asserting putative collective action allegations under the Fair Labor Standards Act. Plaintiff agrees to settle her claims individually to resolve this Litigation.

2. **Payments.** In exchange for Plaintiff's agreement to the release of claims and other terms in this Agreement, the Company will make settlement payments to Plaintiff totaling the gross amount of Fifty Five Thousand Dollars and Zero Cents (**$55,000.00**), as described below (collectively, the "Settlement Payments"). The Settlement Payments will be by checks sent to your attorney within 21 calendar days after the Court has granted approval of the settlement, as described in Section 15 below, provided that the Company has received IRS Form W-9s for both of you and your attorneys, both of you have not revoked the Agreement under Section 13 below, and there has been no appeal of the Court's Order of Approval. (If there is an appeal, the Settlement Payments will be paid after all appeals are finally resolved assuming that the conditions in Section 15 below are met.) You acknowledge that the Company is not obligated to make the Settlement Payments to you unless you agree to the terms in this Agreement and the Court approves the settlement and dismisses the Litigation with prejudice. The Settlement Payments will be made, and allocated for tax purposes, as follows:

   a. **Wage Payment to Plaintiff.** The Company will pay Plaintiff the gross amount of $12,500, less legally required payroll deductions, by check made payable to "Dana Thomas" This payment is made in exchange for a release of claims for alleged unpaid wages. The Company will issue a Form W-2 to you for this payment.

   b. **Non-Wage Payment to Plaintiff.** The Company will make a payment to Plaintiff of $12,500 by check made payable to "Dana Thomas" This payment is made in exchange for a release of claims for liquidated damages associated with the wage claims and as additional consideration for sections 5, 9, 14, and 23 below, as a result, the Company will not withhold from this payment for payroll taxes. The Company will report this payment to the Internal Revenue Service on Form 1099 and makes no representations regarding your tax liability as a result of this payment. You affirm that you are not subject to federal backup withholding.

   c. **Attorneys' Fees Payment.** The Company will make a payment of $30,000 in exchange for a release of claims for attorneys' fees and costs. This payment will be made by

check payable to "Radford & Keebaugh, LLC". The Company makes no representations regarding your tax liability as a result of this payment. The Company will report this payment to the Internal Revenue Service on an IRS Form 1099 directed to both Ms. Thomas and Radford & Keebaugh, LLC.

           d.      The payments by check set forth in paragraphs 2(a)-(c), *supra*, shall be delivered by overnight courier (*e.g.,* FedEx, UPS), with tracking, to:

Radford & Keebaugh, LLC
Attention: Daniel Werner
315 W. Ponce de Leon Ave., Suite 1080
Decatur, GA 30030

        3.      **Tax Allocation**.  You and the Company have engaged in adversarial negotiations regarding the allocation of the above payments for tax purposes, in light of the nature of the claims being settled, as a result of which we have agreed that allocating 50% of the settlement amount (excluding attorney fees) to W-2 wages and 50% to 1099 non-wages is appropriate in relation to the nature of the claims being released.  You represent and warrant that the attorney fee payment amount set out above represents your actual fee obligation to your attorneys.  You acknowledge and agree that the Company has made no representations, warranties, or promises of any kind regarding the tax consequences of any amounts paid pursuant to this agreement.  You agree to pay all federal or state taxes, if any, which you are required by law to pay with respect to this settlement, excluding employer payroll taxes.  You further agree to indemnify the Company for, and hold the Company harmless against, any loss or damage, including costs of defense (including attorney fees), that result from any claim by any governmental entity against the Company for any amounts claimed due on account of the payments made pursuant to this agreement, including taxes, interest, or penalties; provided that this indemnification obligation shall not apply to any claim that the Company failed to properly withhold or remit payroll taxes on the portion of this settlement that the parties have allocated to W-2 wages.

        4.      **Representations and Acknowledgements**.  You acknowledge having received full payment of all compensation and benefits of any kind (including but not limited to wages, overtime, unused accrued paid time off, vacation, sick leave, bonuses, and reimbursable expenses) that you earned as a result of your employment by us, including pay for all hours worked.  You affirm that you have been given the opportunity to take all paid sick leave available pursuant to state or local law.  In addition, any and all previous agreements to pay you compensation or benefits of any kind are terminated. We owe you, and shall owe you, no further compensation or benefits (including but not limited to payments, commissions, bonuses, incentive compensation, equity participation) of any kind, except as described above. You agree that the Company will not use any amount from the Settlement Payments to calculate any benefits, including, for example (but without limitation), vacation, holiday pay, pension, or 401(k) plan contributions. You further agree that the Settlement Payments do not represent any modification of previously credited hours of service or other eligibility criteria under any employee pension or employee welfare benefit plan sponsored by the Company.  You represent that you have had the opportunity to provide the Company with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of the Company or any other Released Parties, and to the extent

2

you are aware of any such misconduct, you have reported it to appropriate Company personnel. You acknowledge that the Company is relying on the accuracy of these representations as a material term of this Agreement.

5.     **Release of Claims.**

a.     Subject to Section 6 below (Rights Not Waived), you hereby release the Company and all other Released Parties from any and all claims of any kind that arose on or before the time you signed this Agreement, including claims arising in contract, tort or otherwise, and claims arising under any governmentally-enacted law, including any federal, state or local statute, ordinance, rule, regulation or order. The Released Parties covered by the prior sentence are (a) the Company and its parents, subsidiaries, affiliates, insurers, insurance policies and benefit plans, and their respective predecessors, successors, transferees and assigns, and (b) each of the past and present officers, directors, agents, employees, equity holders (owners, shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries and attorneys of the entities and plans described in this sentence.

Subject to Section 6 below (Rights Not Waived), the claims you are releasing, as stated in the first paragraph of this Section 5, include, but are not limited to, claims of wrongful termination, claims of constructive discharge, claims arising out of agreements, representations or policies related to your employment, claims arising under federal, state or local laws, statutes or ordinances prohibiting discrimination or harassment or requiring accommodation on the basis of age, race, color, national origin, religion, sex, disability, marital status, sexual orientation or any other status, claims arising under federal, state or local laws, statutes or ordinances prohibiting retaliation or discrimination against a person for making complaints or for any other actions or inactions, claims of failure to accommodate a disability or religious practice, claims for violation of public policy, claims of failure to assist you in applying for future position openings, claims of failure to hire you for future position openings, claims for wages or compensation of any kind, claims of willful withholding of wages, claims of tortious interference with contract or expectancy, claims of fraud or negligent misrepresentation, claims of breach of privacy, defamation claims, claims of intentional or negligent infliction of emotional distress, claims of unfair labor practices, claims arising out of any claimed right to stock or stock options, claims for attorneys' fees or costs, and any and all claims that are based on any legal obligations that arise out of or are related to your employment relationship with us and that arose prior to the date you signed this Agreement.

Subject to Section 6 below (Rights Not Waived), you agree not to seek any personal recovery (of money damages, injunctive relief or otherwise) for the claims you are releasing in this Agreement, either through any complaint to any governmental agency or otherwise, and agree never to start any lawsuit or arbitration asserting any of the claims you are releasing in this Agreement.

You represent and warrant that you have not initiated any complaint, charge, lawsuit or arbitration involving any of the claims you are releasing in this Agreement, or, if other complaints, charges, lawsuits, or arbitrations have been initiated by you or on your behalf against the Released Parties, you will dismiss them with prejudice within five days of receiving the Settlement Payments. This representation does not limit your right to file certain governmental charges in the future, as stated in Section 6 below (Rights Not Waived).

You acknowledge that you do not desire future employment with the Company or its affiliates. Accordingly, you agree not to apply for future employment with the Company or its affiliates and agree that the Company and its affiliates have no obligation to consider you for future employment. This limitation expressly does not prohibit future employment should Plaintiff become employed by the Company by way of a merger or acquisition.

You represent and warrant that you have all necessary authority to enter into this Agreement (including, if you are married, on behalf of your marital community) and that you have not transferred any interest in any claims to your spouse or to any other third party.

You agree that this Agreement gives you fair economic value for any and all potential claims you may have, and that you are not entitled to any other damages or relief. You understand that you are releasing potentially unknown claims, and that you have limited knowledge with respect to some of the claims being released. You acknowledge that there is a risk that, after signing this Agreement, you may learn information that might have affected your decision to enter into this Agreement. You acknowledge, for example, that you may learn that you have suffered injuries of which you are not presently aware. You assume this risk and all other risks of any mistake in entering into this Agreement. You agree that this release is fairly and knowingly made.

b.    In consideration for the compromises and promises made in this Agreement, the Company, including    (a) the Company and its parents, subsidiaries, affiliates, insurers, insurance policies and benefit plans, and their respective predecessors, successors, transferees and assigns, and (b) each of the past and present officers, directors, agents, employees, equity holders (owners, shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries and attorneys of the entities and plans described in this sentence (collectively, "the Company Releasors")  agree to release, and shall be deemed to have released, Plaintiff from any and all legal and equitable claims, causes of action, liabilities and damages, of any kind or nature, including for attorney's fees and other monies, based on Plaintiff's employment with, and separation and departure from, Centene.

The Company Releasors represent and warrant they have not initiated or caused to be initiated any disciplinary proceeding or other process with the Georgia Board of Nursing or any other licensing entity or agency, or any complaint, charge, lawsuit, arbitration, or, involving you. The Company Releasors agree they will not initiate or cause to be initiated any disciplinary proceeding or other process with the Georgia Board of Nursing or any other licensing entity or agency, or any complaint, charge, lawsuit, arbitration involving any aspect of your employment with or work you performed on behalf of the Company.

6.    **Rights Not Waived.  Regardless of any term stated in any other section of this Agreement:**

a.    **This Agreement does not waive your rights, if any, to receive ERISA-covered benefits (*e.g.*, pension, medical, or disability benefits) that are vested pursuant to a formally-adopted and properly-authorized written benefit plan.**

b.      **This Agreement does not waive unemployment compensation benefits, workers' compensation benefits or any other rights that may not lawfully be released by a private agreement.**

c.      **This Agreement does not waive any right you may have to receive a payment or award from a governmental agency (and not the Company) for information provided to the governmental agency.**

d.      **Nothing in this Agreement prevents you from filing a charge or complaint with, or from participating in an investigation or proceeding conducted by, the EEOC, SEC, NLRB, DOL, or any other governmental agency; but as to all of the claims that you have released as provided in this Agreement, you are waiving your right to receive any individual relief in any such investigation or proceeding.**

e.      **Nothing in this Agreement prevents you from (i) providing testimony, information or documents if you are legally compelled to do so, or (ii) communicating with the EEOC, SEC, NLRB, DOL or other governmental agency, including providing documents or other information; however in all cases, you agree to take all reasonable steps that are available (such as redacting information or providing information under seal) to avoid any public disclosure of trade secret information or other confidential business information.**

f.      **You do not need the Company's prior authorization to engage in conduct protected by the prior two paragraphs, and you do not need to notify the Company that you have engaged in such conduct.**

g.      **Nothing in this Agreement prevents you from taking any action to challenge the knowing and voluntary nature of this Agreement under the Older Workers Benefit Protection Act (OWBPA). For example, this Agreement does not prevent you from filing or pursuing a charge of discrimination, lawsuit or arbitration to the extent it is brought under the federal Age Discrimination in Employment Act of 1967 (ADEA) and challenges the knowing and voluntary nature of this Agreement under the OWBPA. Further, nothing in this Agreement shall cause you to be liable for damages, attorneys' fees, costs or disbursements in connection with any such charge of discrimination, lawsuit or arbitration to the extent it is so brought. However, if this Agreement is found to be knowing and voluntary under the OWBPA, your release and waiver of claims under the ADEA, as provided in this Agreement, shall be fully effective.**

7.      **No Admission of Liability.** Neither this Agreement nor the payments made under this Agreement is an admission of liability or wrongdoing.

a.      The Company denies that it violated the law or engaged in any misconduct, willful or otherwise, and disputes the fact and amount of Plaintiff's claims.

b.      You deny that you violated the law or engaged in any misconduct, willful or otherwise, (1) while employed at or performing work on behalf of the company, and/or (2) as alleged in the Company's answer and affirmative defenses in the Litigation.

8.     **Workers Compensation Claims.**  You acknowledge and agree that you have already filed workers' compensation claim(s) for any and all on-the-job injuries you suffered while employed by us, and that you have not suffered any on-the-job injuries for which you have not already filed a workers' compensation claim.

9.     **Company Materials and Nondisclosure.**  You represent and warrant that you have returned all Company documents, information, tangible items, and other property that belongs to us.  You agree that you will keep confidential, and not use or disclose to any person, any confidential or proprietary information not generally known to the public related to the Company, its business, or its members.  You agree that you will not make (or direct anyone to make) any negative or derogatory comment to any third party regarding the Company, its business or operations, or your relationship with the Company.  Your obligations under this Section 9 are subject to the terms of Section 6 above (Rights Not Waived).   The Company agrees to direct Shawanda Allen, Latoya Becks, Laquanda Brooks, and Denise Black, and Brian Parsons not to make any negative or derogatory comments to any third party regarding Plaintiff's employment.

10.     **Employment Verification.**  In keeping with Company policies and procedures, Plaintiff should direct all requests for employment verification to Company's third-party employment verification vendor ("work verification vendor") at 1-800-367-5690; Centene Employer Code: 14500. The work verification vendor will provide only the dates of Plaintiff's employment, positions held, and salary. Any inquiries for employment verification or references that come to Company will be directed to the work verification vendor. Company will not provide information regarding Plaintiff's employment unless compelled to do so by law.  The Company represents that work verification vendor will provide the information set forth in this paragraph.  However, if the work verification vendor does not do so, and upon Plaintiff's request to the Company, the Company shall provide Plaintiff with contact information for a work verification vendor that will provide the information set forth in this paragraph.

11.     **Independent Legal Counsel.**  In connection with this Agreement, the law firm of Littler Mendelson, P.C., has not represented you, but has only represented the Company.  You are advised and encouraged to consult with an attorney before signing this Agreement.   You acknowledge that you have had an adequate opportunity to do so.

12.     **Consideration Period.**  You have twenty-one (21) days from the date this Agreement is given to you to consider this Agreement before signing it.  You may use as much or as little of this 21-day period as you wish before signing.  If you do not sign, date, and return this Agreement within this 21-day period you will not be eligible to receive the benefits described in this Agreement.  You agree that any changes the Company may agree to make to this Agreement after first offering it to you for your consideration will not restart the running of this 21 day period.

13.     **Revocation Period and Effective Date.**  You have seven (7) days after the date you sign this Agreement to revoke it.  To revoke this Agreement after signing it you must provide a written notice of revocation to Benson Pope of Littler Mendelson, P.C. by e-mail to bpope@littler.com before the seven-day period expires.  This Agreement shall not become effective until the eighth (8th) day after the day you sign it. If either of you revoke this Agreement it will not become effective or enforceable and you will not receive the benefits described in this Agreement.

6

14.     **Confidentiality of Offers and Settlement.**   You and the Company represent, warrant and agree that, except as otherwise required by law, you and the Company have kept confidential, and will keep confidential, the existence and terms of this Agreement, and the existence and terms of all settlement demand(s) and offer(s) made between you and the Company regarding the Litigation, provided that you and the Company may state that the matter has been resolved. Despite what was just stated, you may disclose these terms to your spouse, legal counsel, accountants and tax advisors, but only after you have obtained their agreement, for the benefit of the Company, to abide by this confidentiality agreement.  If you have already disclosed these terms to your spouse, legal counsel, accountant or tax advisor, you represent and warrant that you have already instructed them to abide by this confidentiality agreement.  If it becomes strictly necessary to admit any terms of this Agreement as evidence in a court proceeding, arbitration, administrative proceeding or investigation, you and/or the Company may do so, but only after the parties take all steps available to maintain the confidentiality of this Agreement to the fullest extent possible.  The obligations under this Section 14 are subject to the terms of Section 6 above (Rights Not Waived). You and the Company agree this Section 14 expressly will not apply to the Joint Motion to Approve Settlement described in Section 15, *infra*.  You and the Company agree this Agreement and any other necessary supporting documents and descriptions will be filed on the Litigation's publicly-accessible docket.

15.     **Joint Motion to Approve Settlement.**  This Agreement and the settlement it evidences are made in compromise of disputed claims.  Because Plaintiffs' Complaint contains FLSA claims, this settlement must be approved by the Court in accordance with *Lynn's Food Stores, Inc. v. United States, US Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982), and this Agreement is contingent on Court approval.  The Parties agree to file a joint motion to approve the settlement.   The Motion shall seek an Order of Approval that: (a) approves the Settlement Agreement as fair, adequate, and reasonable, and directs consummation of its terms and provisions; and (b) dismisses this Litigation on the merits and with prejudice.  In the event that: (a) the Court does not approve this Agreement and enter an Order Granting Approval of the Settlement and Dismissing the Claims with Prejudice; (b) the Court does not approve of the settlement as proposed by the Parties; (c) the Order of Approval does not become final for any reason, or the terms and conditions set forth in this Agreement are modified in any material respect; or (d) the Order of Approval, as defined herein, does not occur, this Agreement shall be deemed null and void and shall be of no force or effect whatsoever, and shall not be admitted, referred to, or utilized by any Party for any purpose whatsoever.  In the event that this settlement is not approved by the Court or is otherwise not consummated, Defendant does not waive, but rather expressly reserves, all rights to challenge Plaintiff's claims upon all procedural and substantive grounds, including the assertion of all defenses.

16.     **Severability.**  If any part or aspect of this Agreement is held to be unenforceable, it shall not affect any other part or aspect, except that Court approval is required as set forth in Section 15 above for this Agreement to be enforceable.  If any part or aspect of this Agreement is held to be unenforceable as written, it shall be enforced to the maximum extent allowed by applicable law.

17.    **Governing Law; Venue.**  This Agreement is governed by the laws of the State of Georgia that apply to contracts executed and to be performed entirely within the State of Georgia. Venue and jurisdiction of any lawsuit involving this Agreement shall exist exclusively in state and federal courts in Georgia.

18.    **Headings Not Controlling.**  The headings in this Agreement are for convenience only and shall not affect the meaning of the terms as set out in the text.

19.    **Waiver.**  No waiver of any provision of this Agreement shall be valid unless in writing, signed by the party against whom the waiver is sought to be enforced.  The waiver of any breach of this Agreement or failure to enforce any provision of this Agreement shall not waive any later breach.

20.    **Binding Effect.**  This Agreement is binding upon and shall benefit the parties and their personal representatives, heirs, successors and assigns.

21.    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which, taken together, shall constitute a single agreement.

22.    **Attorneys' Fees.**  In any dispute involving this Agreement, the party who substantially prevails shall be entitled to recover reasonable attorneys' fees, costs and disbursements from the other party, except as otherwise expressly provided above.

23.    **No Rehire.**  Plaintiff agrees that she will not be re-employed by the Company or any of its parents, subsidiaries, or affiliates in the future.  Plaintiff acknowledges and agrees that she will not seek reinstatement or seek or accept future employment from the Company or any of its parents, subsidiaries, or affiliates.  Plaintiff agrees that the Company and its parents, subsidiaries, and affiliates have no obligation to employ or otherwise engage Plaintiff and may refuse to do so without any recourse.  Plaintiff acknowledges that this Agreement will constitute a complete and final reason for any subsequent denial of employment, and that this Agreement may be offered as a complete defense to any charge, complaint, claim, or cause of action for such denial. Plaintiff further acknowledges and agrees that, if she does seek or obtain such employment or engagement after the date of execution of this Agreement, Plaintiff's employment or engagement may be terminated, without notice or cause; Plaintiff agrees not to contest such termination. The Parties further agree and acknowledge that if Plaintiff becomes employed by the Company (or any of its parents, subsidiaries, divisions, or affiliates) through a merger or acquisition, Plaintiff will not be required to resign her employment.

24.    **No Reliance.  You acknowledge that you have had the opportunity to conduct an investigation into the facts and evidence relevant to your decision to sign this Agreement. You acknowledge that, in deciding to enter into this Agreement, you have not relied on any promise, representation, or other information not contained in this Agreement, and also have not relied on any expectation that the Company has disclosed all material facts to you.  By entering into this Agreement, you are assuming all risks that you may be mistaken as to the true facts, that you may have been led to an incorrect understanding of the true facts, and/or**

that facts material to your decision to sign this Agreement may have been withheld from you. You will have no claim to rescind this Agreement on the basis of any alleged mistake, misrepresentation, or failure to disclose any fact.  None of what is stated in this paragraph, however, will affect your right to challenge the validity of this Agreement under the Older Workers Benefit Protection Act (OWBPA).

**Final and Complete Agreement.**  This Agreement is the final and complete expression of all agreements between you and the Company on all subjects and supersedes and replaces all prior discussions, representations, agreements, policies and practices, except that any prior obligations arising out of a previously executed agreement or applicable severance plan related to the confidentiality of information, restrictive covenants (such as agreements not to compete and non-solicitation agreements), or intellectual property remain intact and are incorporated by reference herein.  This Agreement may not be amended orally.  It may be amended only by a writing that specifically refers to this Agreement and is signed by all Parties.

25.    **Counterparts**. This Agreement may be executed in one or more originals or counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.

26.    **Electronic Signatures**.  Each party agrees that this Agreement and any other documents to be delivered in connection herewith may be electronically signed, and that any electronic signatures appearing on this Agreement or such other documents are the same as handwritten signatures for the purposes of validity, enforceability, and admissibility.  Counsel for each party has overseen their respective clients'/client's placement of the clients'/client's electronic signatures and has independently confirmed that the electronic signature was placed by the client/clients.

27.    **Protected Rights.**  Nothing in this Agreement including but not limited to the full and final release of claims, promise not to sue, representations, return of company property, confidential information, no disparagement, cooperation, and confidentiality of agreement provisions: (i) limits or affects Plaintiff's right to challenge the validity of this Release under the ADEA or the OWBPA, (ii) limits the rights of any governmental agency or prevents Plaintiff from communicating with, filing a charge or complaint with, cooperating with, or otherwise participating in an investigation or proceeding conducted by the Equal Employment Opportunity Commission, National Labor Relations Board, the Securities and Exchange Commission, the Department of Justice, and/or any other any federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information, or (iii) limits Plaintiff from exercising rights under Section 7 of the NLRA to engage in protected, concerted activity with others. By signing this Release, Plaintiff is waiving rights to individual relief (including back pay, front pay, reinstatement or other legal or equitable relief) in any proceeding brought by Plaintiff or on Plaintiff's behalf by any third party, to the extent permitted by law, except for any right Plaintiff may have to receive a payment or award from a government agency for information provided to the government agency or where otherwise prohibited.

**Agreed by the Company:**

Authorized Agent for the Company

3|30|22

Date

**I, the undersigned, having been advised to consult with an attorney, hereby agree to be bound by this Agreement and confirm that I have read and understood each part of it.**

Agreed by Dana Thomas:

Dana Thomas (Mar 31, 2022 14:11 EDT)

Dana Thomas

Mar 31, 2022

Date

**I, the undersigned, having been advised to consult with an attorney, hereby agree to be bound by this Agreement and confirm that I have read and understood each part of it.**

APPROVED AS TO FORM:

Daniel Werner

Daniel Werner
Radford & Keebaugh, LLC
Attorney for Plaintiff

Mar 31, 2022

Date

Benson E. Pope
Littler Mendelson, P.C.
Attorney for Centene

March 31, 2022

Date

10